RONALD C. MACHEN
United States Attorney
District of Columbia
IGNACIA S. MORENO
Assistant Attorney General
Environment & Natural Resources Division
U.S. Department of Justice
PAMELA S. WEST, Trial Attorney
pamela.west@usdoj.gov
District of Columbia Bar No. 444552
Maryland Bar No. 200501240002
Ohio State Bar No. 0011191
Natural Resources Section
Environment & Natural Resources Division
U.S. Department of Justice
601 D Street N.W., Room 3118
Washington, D.C. 20044-0663
Telephone: (202) 305-0457; Facsimile: (202) 305-0506
ATTORNEYS FOR FEDERAL DEFENDANTS

UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| WESTERN WATERSHEDS PROJECT, *et al.*, | ) | CASE NO. 12-01113 |
| | ) | Judge John D. Bates |
| Plaintiffs, | ) | |
| v. | ) | |
| | ) | **FEDERAL DEFENDANTS'** |
| MIKE POOL, *et al.*, | ) | **MEMORANDUM OF LAW** |
| | ) | **IN SUPPORT OF THE** |
| Federal Defendants. | ) | **MOTION TO TRANSFER** |

## INTRODUCTION

Federal Defendants (Mike Pool, Acting Director, Bureau of Land Management ("BLM"), in his official capacity; Jonathan B. Jarvis, Director, National Park Service, in his official capacity; and Kenneth Salazar, Secretary, U.S. Department of the Interior, in his official capacity) move to transfer this case. This motion should be granted because it is in the interest of justice (BLM's actions impact conditions on-the-ground in Utah– not in Washington, D.C.),

1

and the District of Utah is a more convenient forum for all of the parties. In toto, as shown *infra*, all of the applicable legal principles and the relevant facts favor the transfer of this case to the U.S. District Court for the District of Utah.

## BACKGROUND

The Grand Staircase-Escalante National Monument was created by Presidential Proclamation No. 6920 (Establishment of the Grand Staircase-Escalante National Monument, 61 Fed. Reg. 50,223 (Sept. 18, 1996)). The Proclamation specified that "[n]othing in this proclamation shall be deemed to affect existing permits or leases for, or levels of, livestock grazing on Federal lands within the monument; existing uses shall continue to be governed by applicable laws and regulations other than this proclamation." *Id.* The Proclamation specified that the Secretary of the Interior should prepare a Monument management plan within three years. *Id.* To implement this directive under the Federal Land Policy and Management Act ("FLPMA"), 43 U.S.C. § 1701 *et seq.,* in conformity with the National Environmental Policy Act ("NEPA"), 42 U.S.C. § 4321 *et seq.*, BLM prepared the Management Plan (approved Nov. 1999; effective Feb. 2000). *See* http://www.blm.gov/ut (Last visited Nov. 9, 2012) ("Plan"). The Plan guides BLM's current management of the grazing allotments on the Grand Staircase-Escalante National Monument and the adjacent Glen Canyon National Recreation Area.[1/] *Id.*

Under the Plan, the Rangeland Health of each grazing allotment is to be "assessed" in accordance with BLM's "guidelines and guidance." Plan at 41. Applying the Utah Standards for Rangeland Health ("Standards"), each Rangeland Health Assessment considers all of the

---

[1/] Grazing on the lands managed by the National Park Service within the Glen Canyon National Recreation Area is administered by BLM under inter-agency agreements. *See* Glen Canyon Enabling Act, as codified, 16 U.S.C. § 460dd-5.

available information including data on ecological processes, special status species, watershed conditions, water quality conditions and wildlife habitat conditions. *Id.* Once the Assessment is completed, BLM determines whether each grazing allotment is achieving the Standards or making significant progress towards achieving them. *Id.*

If BLM determines that a grazing allotment is not making significant progress towards achieving the Standards, the agency assesses whether the existing livestock grazing practices are significant causal factors. *Id.* If the existing livestock grazing practices are significant cause factors, BLM is required to take appropriate actions no later than the start of the next grazing season to modify the existing grazing management practices or levels of grazing use. *Id.; see also* 43 C.F.R. § 4180.2(c)(2005).

In the instant case, Plaintiffs challenge BLM's actions and the overall administration of the grazing allotments in the Grand Staircase-Escalante National Monument ("GSENM") and the Glen Canyon National Recreation Area ("GCNRA").[2] *See generally* Complaint for Declaratory and Injunctive Relief ("Compl.") (ECF Doc. 1)[3] . Citing to the July 2006 Grazing Allotments' Rangeland Health Determinations, they assert that BLM violated FLPMA and the FLPMA regulations. *See* 43 C.F.R. Subpart 4180 (2005). *Id.* Plaintiffs allege that the July 2006 Rangeland Health Determinations for the Collet, Cottonwood, Death Hollow, Fortymile Ridge, Last Chance, Lower Cattle, Mollie's Nipple, Rock Creek-Mudholes, School Section, Soda,

---

[2] *See* http://www.westernwatersheds.org (Last visited Nov. 9, 2012); *see also* http://grandcanyontrust.org (Last visited Nov. 9, 2012); http://web2.westlaw.com (Last visited Nov. 9, 2012).

[3] The named plaintiffs are Western Watersheds Project, Inc. ("WWP"), an Idaho non-profit corporation; Dr. John G. Carter, WWP member (Mendon, Utah); and Jonathan B. Ratner, WWP member (Pinedale, Wyoming).

Swallow Park, Upper Paria, and Vermillion Grazing Allotments mandated corrective steps to improve rangeland health that BLM never took. *See* Compl. ¶¶ 29-43. This is incorrect. *See* Answer ¶¶ 29-43. On the merits, BLM will demonstrate that it acted in compliance with the Plan and the applicable law and show that the agency has taken all appropriate actions to properly administer the grazing allotments.[4/]

## STANDARD OF REVIEW

To cure defects in venue, a district court "shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." 28 U.S.C. § 1406(a). The burden is "on the plaintiff to establish that venue is proper since it is 'the plaintiff's obligation to institute the action in a permissible forum.'" *Slaby v. Holder*, No. 12-1160, 2012 WL 5381409, at * 2 (D.D.C. Nov. 4, 2012) (quoting *Williams v. GEICO Corp.*, 792 F. Supp. 2d 58, 62 (D.D.C. 2011)).

A district court has broad discretion to transfer venue "[f]or the convenience of parties and witnesses, in the interest of justice" in "any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). To determine whether a case should be transferred, a district court considers both "convenience and fairness." *Pres. Soc'y of Charleston v. U.S. Army Corps of Eng'rs*, No. 12-1089, 2012 WL 4458446, at * 5-6 (D.D.C. Sept. 27, 2012) (quoting *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988)). A court applies a three-part

---

[4/]   For example, on-the ground at the Vermillion Allotment, BLM took numerous remedial steps including (1) restoration and maintenance work on spring boxes and fences at Cole, Nephi, and Sand Springs (2007); (2) restoration work and seeding in RCA-1, RCA-2, RCA-3, and Fossil Wash Pastures (2006); (3) 74 % coordinated voluntary non-use to meet resource objectives (2006 to the Present); (4) installation of water catchments in Government Reservoir Pasture and (5) maintenance work on Fossil Wash stock pond (2007). *See* Answer ¶ 41.

4

test to determine whether a case should be transferred to another district court: (1) whether the case could have been brought in the transferee district court; (2) whether the "public interest factors" favor transfer and (3) whether the "private interest factors" favor transfer. *See Van Dusen v. Barrack*, 376 F.3d 612, 622 (D.C. Cir. 1964); *see also Sierra Club v. Flowers*, 276 F. Supp. 2d 62, 65 (D.D.C. 2003); *Trout Unlimited v. U.S. Dep't of Agric.*, 944 F. Supp. 13, 16 (D.D.C. 1996). Additionally, in this Circuit, motions to transfer are generally favored where, as in the instant case, a plaintiff has chosen to name high government officials seeking to "manufacture" venue in the District of Columbia. *Pres. Soc'y of Charleston,* 2012 WL 4458446, at * 6 (citing *Cameron v. Thornburgh*, 982 F.2d 253, 256 (D.C.Cir. 1993)).

**ARGUMENT**

**I.     PLAINTIFFS COULD HAVE BROUGHT THEIR CLAIMS IN UTAH.**

Plaintiffs' Complaint shows that they could have brought this lawsuit in the U.S. District Court for the District of Utah. *See generally* Compl.; *see also* 28 U.S.C. § 1391(e). In that pleading, they assert that "WWP works to improve public lands management in eight western states, including Utah, with a primary focus on the negative impacts of livestock grazing . . . ." Compl. ¶ 3. Plaintiffs stated that they rely on the expertise of WWP member, Dr. John G. Carter, a Utah resident, who has allegedly visited many of the grazing allotments at issue in this case. *Id.* ¶¶ 6-7. They also contend that they will rely on the observations of WWP member, Jonathan Ratner, who "has visited and will continue to observe . . . the Collet, Cottonwood, Death Hollow, [Fortymile] Ridge, Last Chance, Lower Cattle, Mollie's Nipple, School Section, Swallow Park, Upper Paria, and Vermillion [Grazing Allotments]." *Id.* ¶ 8. The Complaint alleges without explanation that both Dr. Carter and Mr. Ratner will be injured by BLM's alleged failure to

5

properly manage the grazing allotments in Utah.[5]  *Id.* ¶¶ 7, 9.

In the Complaint, Plaintiffs challenge BLM's management of the grazing allotments in Utah without even naming the responsible official, Rene C. Berkhoudt, Manager at the GSENM. *See generally* Compl.  Instead, Plaintiffs named as defendants "high government officials" such as the Kenneth Salazar, Secretary of the Interior; Mike Pool, Acting BLM Director; and Jonathan B. Jarvis, Director, National Park Service ("NPS").  *Id.*  Secretary Salazar is the responsible Cabinet officer who oversees the administration of the approximately 416 million acres of Federal lands managed by the U.S. Department of the Interior.  *See generally* http://www.fas.org (Last visited Nov. 12, 2012).  Acting BLM Director Pool is the responsible official who administers the approximately 248 million acres of Interior's lands that are under BLM's management.  *Id.*  Finally, NPS Director Jarvis is the responsible official who administers the approximately 80 million acres of Interior's lands that are under NPS management.  *Id.*

Clearly, this lawsuit raises issues that relate to BLM's administration of grazing allotments in Utah – not issues related to all of the Federal lands administered by the U.S. Department of the Interior.  Simply naming "high government officials" instead of the appropriate official, Rene Berkhoudt, does not make this a lawsuit that should be adjudicated in the District of Columbia.  The Complaint, as pled, shows that Plaintiffs could have, and should have, filed this lawsuit in Utah.

---

[5]     No affidavits or declarations were submitted to support WWP's contentions.  To date, Plaintiff has also failed to establish Article III standing.  *See Sierra Club v. EPA*, No. 11-1184, 2012 WL 5457950, * 3-4 (D.C. Cir. Nov. 9, 2012) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992)).

## II. THE PUBLIC INTEREST FACTORS FAVOR THE TRANSFER TO UTAH.

When considering a transfer motion, a district court should consider public interest factors including: (1) the potential transferee court's familiarity with applicable law, (2) the congestion of the transferee court to that of the transferor court, and (3) the local interest in making local decisions about local controversies. *United States v. Second Chance Body Armor, Inc.*, 771 F. Supp. 2d 42, 46 (D.D.C. 2011) (citing *Demery v. Montgomery Cnty., Md.*, 602 F. Supp. 2d 206, 2010 (D.D.C. 2009)). Applying these factors, first, it is presumed that the U.S. District Court for the District of Utah and this Court are equally familiar with the law governing Plaintiffs' FLPMA claims. *Id.* Consequently, this factor is not germane. However, the court congestion factor is germane and significant. The Federal Court Management Statistics[6] indicate that there were 334,678 pending cases in the ninety-four (94) U.S. District Courts. *See* Defs.' Ex. 3. There were 3,886 cases pending in the U.S. District Court for the District of Columbia (this was a 6.5 % increase from 2010 to 2011). *Id.* In contrast, 2,139 cases were pending in the U.S. District Court for the District of Utah (this was a slight decrease (0.3 %) from 2010 to 2011). *Id.* While the U.S. District Court for the District of Columbia ranked 32nd of the 94 district courts in its caseload; the U.S. District Court for the District of Utah ranked 59th of the 94 district courts in its caseload. *Id.* Clearly, the U.S. District Court for the District of Utah is a much less congested court than this Court. *Id.*

Finally, looking at the potential local interest in Utah in this dispute, the local news media (Salt Lake Tribune) indicates that the controversy over grazing is an important local issue. *See*

---

[6] The most recent available information from the U.S. Court's website is current as of September 30, 2011. *See* http://www.uscourts.gov/Statistics (Last visited Nov. 12, 2012).

"Grazing Plan? Those are fighting words on Grand Staircase" http://www.sltrib.com (Last visited Nov. 12, 2012). The interests of justice are promoted when a localized controversy such as this one is resolved in the region that it impacts. *See Oil, Chem. & Atomic Workers Local Union No. 6-418 v. Nat'l Labor Review Bd.*, 694 F.2d 1289, 1300 (D.C. Cir. 1982). As the Supreme Court has noted, "[i]n cases which touch the affairs of many persons, there is reason for holding the trial in their view and reach rather than in remote parts of the country where they can learn of it by report only. There is a local interest in having localized controversies decided at home." *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 509 (1947); *in accord Sierra Club*, 276 F. Supp. 2d at 67. The implications of a decision resolving this dispute over BLM's management of the grazing allotments will be felt more acutely in Utah, where its citizens are directly affected. Under the circumstances, this Court should recognize the compelling interest of the citizens of Utah in having this localized controversy decided at home. *See Nat'l Wildlife Fed'n v. Harvey*, 437 F. Supp. 2d 42, 49 (D.D.C. 2006); *see also Trout Unlimited,* 944 F. Supp. at 19. The Court should also note "the importance of allowing local citizens to attend and observe proceedings in this case." *Hawksbill Sea Turtle v. FEMA*, 939 F. Supp. 1, 3 n.5 (D.D.C. 1996). "That would obviously be impossible (or at least prohibitively expensive) if trial were held in the District of Columbia." *Id.* Clearly, an evaluation of all of the public interest factors indicates that this case should be transferred to the U.S. District Court for the District of Utah.

## III. THE PRIVATE INTEREST FACTORS FAVOR THE TRANSFER TO UTAH.

The private interest factors also favor transfer of this case. These factors include (1) the plaintiffs' choice of forum, (2) where the claim arose, (3) the convenience of the parties, (4) the convenience of the witnesses, and (5) the ease of access to the sources of proof. *Demery*, 602 F. Supp. 2d at 210. All of these factors favor the transfer of this case to the U.S. District Court for the District of Utah.

It is well established that "[a] plaintiff's choice of forum is entitled to deference, unless that forum has no meaningful relationship of the parties' claims or to the parties." *Second Chance Body Armor, Inc.*, 771 F. Supp. 2d at 47 (citing *Veney v. Starbucks Corp.*, 559 F. Supp. 2d 79, 84 (D.D.C. 2008)). In this case, there is no connection between the claims pled which relate solely to BLM's administration of grazing allotments in Utah, and Plaintiffs' decision to file this lawsuit in the District of Columbia. Consequently, Plaintiffs' choice of forum is not entitled to any deference.

In fact, the only apparent connection to the District of Columbia is the location of the offices of Plaintiffs' counsel. However, this is of little significance in assessing whether a case should be transferred to another district court. *Kazenercom Too v. Turan Petro., Inc.*, 590 F. Supp. 2d 153, 163 (D.D.C. 2008) (citing *Reiffin v. Microsoft Corp.*, 104 F. Supp. 2d 48, 52 n.7 (D.D.C. 2000)).

Overall, the private interest factors dictate that this case should be transferred: the relevant actions were taken in Utah by the GSENM Manager, the claims arose in Utah, the parties have offices in Utah, the witnesses are largely in Utah, and the on-the-ground proof of the status of each BLM administered grazing allotment is in Utah. *Miller v. Toyota Motor Corp.*, 620 F. Supp.

9

2d 109, 118-19 (D.D.C. 2009) (private interest factors dictate that transfer is appropriate when a plaintiff chooses a forum that is not its home forum or the place where any of the relevant events occurred). There is no basis for adjudicating this dispute over BLM's grazing management in the District of Columbia. Given this, the overall interests of justice will be better served by the transfer of this case.

## CONCLUSION

WHEREFORE, on the basis of the foregoing, Federal Defendants request that the motion to transfer be granted. Given the early stage of proceedings, the transfer of this case to the U.S. District Court for the District of Utah will not lead to any significant delay in the adjudication of this dispute. *Trout Unlimited*, 944 F. Supp. at 17. Hence, given the District of Columbia's attenuated connection, if any, to Plaintiffs' claims and the clear connection of these claims to Utah, all of the applicable facts and legal principles support the transfer of this case to the U.S. District Court for the District of Utah.

Dated: November 14, 2012        Respectfully submitted:

RONALD C. MACHEN
United States Attorney
District of Columbia

IGNACIA S. MORENO
Assistant Attorney General
Environment & Natural Resources Division

**/s/ Pamela S. West**
PAMELA S. WEST, Trial Attorney
pamela.west@usdoj.gov
District of Columbia Bar No. 444552
Maryland Bar No. 200501240002
Ohio Bar No. 0011191
Natural Resources Section
Environment & Natural Resources Division
U.S. Department of Justice
P.O. Box 7611
Washington, D.C. 20044-7611
Telephone: (202) 305-0457
Facsimile: (202) 305-0506

ATTORNEYS FOR FEDERAL DEFENDANTS

UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| WESTERN WATERSHEDS PROJECT, *et al.,* | ) | CASE NO. 12-01113 |
| | ) | |
| Plaintiffs, | ) | Judge John D. Bates |
| v. | ) | |
| | ) | |
| MIKE POOL, *et al.*, | ) | **CERTIFICATE OF SERVICE** |
| | ) | |
| Federal Defendants. | ) | |

I hereby certify that on the 14st day of November 2012, I electronically filed the foregoing document with the Clerk of Court by using the CM/ECF system which will send notice of electronic filings to the following:

Attorneys for Plaintiffs:

Howard M. Crystal, Attorney
hcrystal@meyerglitz.com
Jessica Almy, Attorney
jalmy@meyerglitz.com
MEYER, GLITZENSTEIN & CRYSTAL
1600 Connecticut Ave., N.W., Suite 700
Washington, D.C. 20009
Telephone: (202) 588-5206
Facsimile: (202) 588-5049

                                             **/s/ Pamela S. West**
                                             PAMELA S. WEST, Trial Attorney